IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PHILIP LIGHTFOOT SELLERS,         )   | |
|                          Plaintiff,         ) | |
| v.                                                                  ) | |
|                                                                         )   | Case No. 2:15cv236-WHA |
| RENEWABLE FUELS, LLC and JOHN    )   | |
| F. COLQUITT,                                             )   | (wo) |
|                      Defendants.       ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This cause is before the court on two Motions for Partial Summary Judgment (Doc. #45, 46), filed by the Defendants, Renewable Fuels, LLC ("Renewable Fuels") and John F. Colquitt ("Colquitt"), respectively, on May 9, 2016.

The Plaintiff filed a Complaint in the Circuit Court of Montgomery County, Alabama in March of 2015. In the Complaint the Plaintiff brought claims for breach of joint venture agreement (Count I), breach of fiduciary duty (Count II), and breach of contract (Count III).

The case was removed to this court on the basis of diversity subject matter jurisdiction. No motion to remand was filed, and the requisite diversity of citizenship and jurisdictional amount are present.   *See* 28 U.S.C. §1332(a)(1).

The court granted a Motion to Dismiss and dismissed claims against John F. Colquitt without prejudice, giving the Plaintiff time in which to file an Amended Complaint. (Doc. #11).

The Plaintiff filed an Amended Complaint bringing claims for breach of joint venture agreement against Renewable Fuels (Count I), breach of contract against Renewable Fuels (Count II), breach of contract against Colquitt (Count III), breach of fiduciary duty against Colquitt

(Count IV), promissory fraud against Colquitt (Count V), suppression against Colquitt (Count VI), and unjust enrichment against Colquitt and Renewable Fuels (Count VII). (Doc. #13). The court subsequently granted a Motion to Dismiss as to the breach of fiduciary duty claim in Count IV. (Doc. #18).

Defendant Renewable Fuels originally moved for summary judgment as to Counts I and II and Defendant Colquitt moved for summary judgment as to Counts V and VI of the Amended Complaint. In their Joint Reply brief, however, the Defendants have stated that they "concede that summary judgment is not due to be granted as to" the claims in Counts I and II for breach of contract and breach of a joint venture against Renewable Fuels and in Count VI for fraudulent suppression against Colquitt. Colquitt continues to seek summary judgment as to the claim for promissory fraud against him in Count V of the Amended Complaint.

For reasons to be discussed, the Motion for Partial Summary Judgment is due to be DENIED.

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

2

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

The Plaintiff, Philip Lightfoot Sellers ("Sellers"), is the president of an investment banking company, Philip Sellers Company, Inc. Defendant John Colquitt ("Colquitt") is a member of Renewable Fuels, LLC. Renewable Fuels was formed in 2008. Sellers was not a member of Renewable Fuels.

Sellers and Colquitt met when Sellers was with a different company, Fulghum Fibrefuels.

That company was in the wood pellet business.

Renewable Fuels entered into a written commission agreement with Lee Energy Solutions, LLC ("Lee Energy"). It is Sellers' position that he was involved in negotiating the agreement with Lee Energy, by which Colquitt and Sellers offered to locate buyers of wood pellets in exchange for commission on the pellets. Sellers has stated that during negotiations with Lee Energy, he and Colquitt, as individuals, entered into an agreement where they would share equally all revenue derived from the agreement with Lee Energy.

Lee Energy paid Renewable Fuels three commission payments in 2011 from the sale of wood pellets. In accordance with a joint venture agreement, Colquitt paid Sellers half of these three commission payments.

In April of 2012, Renewable Fuels received a fourth commission payment from the sale of Lee Energy wood pellets in the amount of $95,876.86. On May 25, 2012, Colquitt asked Sellers if he could borrow Sellers' half of this commission payment as well as Sellers' half of the next commission payment that was expected. Colquitt represented that he needed the money due to some personal financial issues. Sellers agreed. Colquitt agreed to repay Sellers the equivalent amount from subsequent commissions on the sale of Lee Energy wood pellets or money from a second prospective venture.

In August of 2012, Renewable Fuels received a fifth commission payment for $92,239.59 from Lee Energy. Colquitt kept Sellers' half of this payment.

Lee Energy then took the position that it was no longer obligated to pay Renewable Fuels commissions, and Renewable Fuels sued Lee Energy for the continued commission payments. The lawsuit was settled in early April 2014. Colquitt informed Sellers that the lawsuit had been settled on April 30, 2014. Sellers did not receive any portion of the proceeds from the settlement. Sellers

was not repaid for the loaned commission amounts.

## IV.   DISCUSSION

As noted above, the Defendants originally moved for summary judgment on the breach of joint venture agreement (Count I), breach of contract (Count II), promissory fraud (Count V), and suppression of material facts (Count VI) claims, but in their Reply in support of their Motions for Summary Judgment, the Defendants concede those motions except as to Sellers' claim for promissory fraud against Colquitt in Count V.  The court, therefore, turns to the grounds for summary judgment asserted as to that claim.

Colquitt moves for summary judgment on the ground that the claim for promissory fraud against him is time-barred under the two-year statute of limitations in Ala. Code §6-2-38(l). Colquitt argues that the promissory fraud claim in the Amended Complaint is based on an agreement made between Colquitt and Sellers on May 25, 2012 to loan Colquitt two commission payments on the promise that Colquitt would repay the loan.  Sellers filed his Complaint on March 10, 2015 and an Amended Complaint June 12, 2015, which are more than two years after the alleged fraud occurred.   Colquitt also argues that Sellers is not entitled to claim the statutory tolling provision of Ala. Code §6-2-3 because Sellers gave testimony that he wondered about Colquitt's representation being on the "up and up," showing that he was aware of facts revealing fraud.  Also in response to an argument by Sellers,[1] Colquitt argues that because the Amended Complaint on its face showed that the claim was barred by the statute of limitations, but the Amended Complaint did not plead that the statute of limitations was due to be tolled, Sellers is not entitled to tolling under cases such as *Amason v. First State Bank of Linville*, 369 So. 2d 547 (Ala.

---

[1] Initially, Sellers opposed summary judgment on a theory that his claim did not accrue until payment was not made by Colquitt and the theory that he did not discover a refusal to pay until later.   (Doc. #54 at p.26-8).

1979).

Having been given additional time to address Colquitt's argument regarding tolling, Sellers clarified in a response brief that he is not seeking tolling of the statute of limitations. Instead, he states that he did not suffer any damages from his promissory fraud claim until Renewable Fuels recovered proceeds from the settlement with Lee Energy, therefore, his claim did not accrue until that point. According to Sellers, Colquitt was not obligated to pay Sellers money until March of 2014 when Colquitt first received proceeds from additional shipments of Lee Energy wood pellets as part of the settlement agreement with Lee Energy. (Doc. #57 at p.5). In other words, Sellers argues that he need not rely on tolling because the statute of limitations did not begin to run until March of 2014.

"[T]he limitations period does not begin to run until the cause of action accrues, and a cause of action does not accrue until the actions of the tort-feasor result in injury or damage." *Jackson v. Secor Bank*, 646 So. 2d 1377, 1379 (Ala. 1994). The elements of promissory fraud are (1) a false representation, (2) of a material existing fact, (3) reasonably relied upon by the plaintiff, (4) who suffered damage as a proximate consequence of the misrepresentation, (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. *Ex parte Moulton*, 116 So. 3d 1119, 1144 (Ala. 2013). The requirement of reliance is met if the plaintiff does, or does not do, something that the plaintiff would or would not have done but for the misrepresentation of a material fact. *Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1116 (Ala. 2007). Reliance is also referred to as "detrimental reliance." *Id.* (stating that an element of fraud is an action by the plaintiff to his injury, commonly known as "detrimental reliance."). Under Alabama law, a "fraud claim fully accrues once any legally cognizable damage has proximately

resulted, i.e., once the plaintiff has 'detrimentally' relied on the fraud." *Borsage Offshore, LLC v. Compass Bank*, 943 So. 2d 782, 787 (Ala. 2006) (quoting *Ex parte Haynes Downard Andra & Jones, LLP*, 924 So.2d 687, 694 (Ala. 2005)).

In *Borsage Offshore, LLC*, the court addressed an argument that detrimental reliance, as a separate element of fraud, could be proven independently from the element of the damage that flowed from reliance. 943 So. 2d at 787. The court explained that the notion that detrimental reliance is "untethered to damage, however, is completely unfounded." *Id.* As stated by the Supreme Court of Alabama, the "lumping of the concept of 'reliance' with 'damage' or 'detriment'—whence comes 'detrimental reliance'—is simply another way of referring to the combined elements of reliance and damage. *Id.* at 787. In that decision, there was reliance by the plaintiff on a letter of credit in deciding to transition to a new business. *Id.* The court concluded that the plaintiff must prove that reliance on the representation in the letter of credit proximately caused the damage. *Id.* The Supreme Court of Alabama determined that there was no evidence that the transition to a new business harmed the plaintiff, and therefore, there was no detrimental reliance on the letter of credit. *Id.* at 789. Although *Bosarge Offshore* is not a case applying statute of limitations accrual analysis, in its analysis of detrimental reliance, the court specifically noted that a fraud claim fully accrues "once the plaintiff has 'detrimentally' relied on the fraud," that is, at the point at which "legally cognizable damage has proximately resulted." *Id.* at 787.

Applying *Borsage Offshore* in this case, Sellers acted in reliance on a representation by Colquitt when he agreed to allow Colquitt to keep commission money paid by Lee Energy as part of a loan agreement. To succeed on a promissory fraud claim, however, Sellers must show that he was damaged by his reliance. That is to say, within the reasoning of *Borsage Offshore*, Sellers' reliance did not become detrimental until there was damage. *Id.* at 787. "Fraud, as a cause of

7

action, requires some damage stemming from reliance on a misrepresentation or suppression intended to induce that reliance." *Id.* (citation and emphasis omitted). Sellers was not damaged until he did not receive re-payment of the loan. At the point at which the representation initially was made by Colquitt, even though Colquitt is alleged to have had intent not to fulfill the promise at that time, Sellers would not have been entitled to bring a lawsuit against Colquitt because Colquitt had not yet failed to do as promised and there is no evidence that Sellers had knowledge of Colquitt's intent not to repay the loan at that point. *See, e.g., Chaney v. Ala W.-AL, LLC*, 22 So. 3d 488, 498 (Ala. Civ. App. 2008) (stating that a cause of action does not accrue until a plaintiff is entitled to maintain the action). If Colquitt had repaid the loan amounts, Sellers would have suffered no damage, and would have had no claim for promissory fraud even though Sellers paid money in reliance on a representation that he would be repaid. In short, while there is evidence that Sellers relied on a representation in March of 2012, there is no evidence that he suffered damage then, and, therefore, no evidence to support a finding that his claim accrued in March of 2012.

This case is to be distinguished from the facts of cases of detrimental reliance in which a plaintiff relies on false representations to purchase insurance policies which, despite the lack of a claim being made on them, fail to deliver the coverage promised at that time. *See, e.g., Boswell v. Liberty Nat. Life Ins. Co.*, 643 So. 2d 580, 585 (Ala. 1994). This case is also distinct from the facts of *Ex parte Haynes Downard Andra & Jones*, where injury occurred at the point at which the business was purchased based on a representation about the health of the business, even though other damage also later resulted. 924 So.2d at 694. In this case, Sellers received what was promised until Colquitt failed to repay him. The court agrees with Sellers, therefore, that summary judgment cannot be granted based on a theory that the statute of limitations began to run

on the promissory fraud claim in May of 2012.

## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED that the Motions for Partial Summary Judgment (Doc. #45, 46) are DENIED.

The case will proceed to trial on all pending claims.

DONE this 28th day of June, 2016.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE