IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PHILIP LIGHTFOOT SELLERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:15cv236-WHA |
| | ) |
| RENEWABLE FUELS, LLC and JOHN F. COLQUITT, | ) (wo) |
| | ) |
| | ) |
| Defendant. | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I. INTRODUCTION**

The Plaintiff, Philip Lightfoot Sellers, brings the following claims in this case: breach of Joint Venture Agreement/Contract against Renewable Fuels, LLC;[1] suppression against John F. Colquitt ("Colquitt"); breach of contract against Colquitt based on a May 25, 2012 agreement; promissory fraud against Colquitt; and unjust enrichment against Renewable Fuels and Colquitt.

A one-day bench trial was held in this case on August 24, 2016. Based on the entire record, including the post-trial briefs, and the testimony presented at the trial, the court makes the following findings of fact and conclusions of law.

**II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

[1] The court has taken this statement of the Plaintiff's claims, and the Defendant or Defendants against whom they are brought, from the Pre-Trial Order, which takes the place of the pleadings in this case. (Doc. #59). Defense counsel objected at trial to a characterization of the claim as one against Colquitt individually. The confusion arises, as demonstrated by the facts, because it was at times unclear whether Colquitt was acting on his own behalf or as an agent of Renewable Fuels, LLC. Colquitt testified that the agreement was with Renewable Fuels. Sellers testified at trial that his agreement was with Colquitt individually, but the factual statement upon which he based that opinion was that Colquitt controlled Renewable Fuels. The court finds that the Joint Venture Agreement/Contract to share commissions was between Sellers and Renewable Fuels.

### A. Findings of Fact

The court finds the following facts by a preponderance of the evidence.

The Plaintiff, Philip Lightfoot Sellers ("Sellers"), has brought claims against his former business associate Colquitt, and against a Limited Liability Company formed by Colquitt, Renewable Fuels, to sell wood pellets.

Sellers and Colquitt had worked together in a previous business venture involving a wood pellet plant in Nova Scotia, Canada. In early 2010, Colquitt and Sellers began working together in their new pellet mill venture. Colquitt was the Director of the company, Defendant Renewable Fuels. Colquitt offered Sellers a membership interest in Renewable Fuels, which Sellers refused. In various business dealings thereafter, however, Sellers held himself out as acting as a representative of Renewable Fuels.

Eventually, Renewable Fuels entered into a written contract with a pellet mill company, Lee Energy Solutions ("Lee Energy"). Under the agreement, Lee Energy would pay commissions to Renewable Fuels on the sales of wood pellets secured by Renewable Fuels.

Sellers and Colquitt agreed that Sellers would receive one-half of the commissions paid by Lee Energy to Renewable Fuels, less expenses. There is a dispute as to the consideration paid by Sellers pursuant to this agreement. Colquitt testified at trial, however, that there was an agreement to pay half of every commission that involved Lee Energy pellets to Sellers. The agreement was not written down at that time. Subsequently, however, Colquitt sent e-mails to Sellers which reflected this agreement and sought Sellers' agreement with the handling of his share of commission payments. One such e-mail, Plaintiff's Exhibit 25, from Sellers, dated December 20, 2010, states as follows:

2

> You and I should discuss how we are going to handle all of our "riches" from the Lee account. My thoughts are that we will have the payment wired into our company account I already have at the Bank of America and I will immediately either wire or write a RFLLC check to you. I will split it so you and I will receive 50%.

Four payments were made to Sellers pursuant to that agreement, once each time that Lee Energy paid Renewable Fuels a commission payment. The payments were from Lee Energy to Renewable Fuels, deposited in a Renewable Fuels account, and then paid to Sellers, or Sellers' separate, unrelated company. Colquitt paid a share of each commission, less any amount they agreed to withhold for travel and other expenses. Colquitt issued checks on behalf of Renewable Fuels pursuant to this agreement for $38,983.23 on February 3, 2011; $51,070.28 on May 31, 2011; $35,356.22 on September 22, 2011; and $37,132.76 on December 8, 2011. (Plaintiff's Exhibit 80).

In April of 2012, Renewable Fuels received another commission payment from Lee Energy in the amount of $95,876.86. On May 25, 2012, Colquitt placed a phone call to Sellers. Both men were in their cars at the time, and Margie Sellers, Sellers' wife, was also in the car and heard the conversation over the car's loudspeaker. Sellers testified at trial that he had an agreement with Colquitt individually to lend him Sellers' half of two commission payments. Sellers testified that Colquitt said that he wanted to borrow the April commission payment amount and half of the next commission payment because of a financial problem related to taxes. Margie Sellers also characterized the agreement as being to allow Colquitt to use Sellers' commission payments for personal financial problems.

After the phone call, Sellers sent Colquitt an e-mail involving several matters in separate paragraphs, one of which set forth the scope of the agreement reached in that phone call. Colquitt

3

responded by sending back the e-mail with his comments below other paragraphs, but he did not comment on the paragraph regarding the substance of the agreement in the phone call.

The paragraph of the e-mail which Colquitt sent back to Sellers but which was left without comment states as follows:

> In summarizing the Lee money issue I understand that you are borrowing from me my part of the last shipment commission and the next shipment— roughly $80-100,000. Then you will pay me back from money received from the Century project or the next commissions from the next Lee payments which ever happens first.

(Plaintiff's Exhibit 79). The Century project referred to in the e-mail was a proposed pellet mill in Century, Florida, which never came to fruition.

When asked at trial, Colquitt testified that it was his understanding that there was an agreement for Renewable Fuels to pay the April commission payment from Lee Energy to Sellers, but that Sellers agreed to forbear that payment for a period of time, and that the obligation would be triggered by more Lee Energy commission payments or the Century Project closing. Colquitt characterized the future payments as being made by Renewable Fuels. When offering an explanation in his testimony, however, as to why he did not correct the e-mail in Plaintiff's Exhibit 79 if it was not correct, Colquitt testified that he had anticipated that if it were a loan, there would be paperwork. The court finds that the e-mail characterization of a loan is consistent with an agreement by Sellers not to be paid money owed by Renewable Fuels at that time, and for Colquitt individually to pay the money owed by Renewable Fuels at a later time.

On August 15, 2012, Renewable Fuels received a sixth commission payment in the amount of $94,239.59. (Plaintiff's Exhibit #93). Colquitt did not pay Sellers a share of the commission

payment at that time, which was consistent with their May 2012 agreement. Colquitt testified at trial, however, that despite the May 2012 agreement, he never paid Sellers for his share of either the April or August commission payments.

Lee Energy did not make any commission payment to Renewable Fuels after August 2012. Sellers and Colquitt discussed filing a lawsuit against Lee Energy. Renewable Fuels eventually did so, and settled the lawsuit with Lee Energy. Colquitt did not tell Sellers about the settlement. When Sellers inquired about the status of the case, Colquitt told him that he had settled the case, but there was not enough money left over from the settlement to pay Sellers.

Colquitt testified at trial that the payment from Lee Energy did not represent commission payments. Plaintiff's Exhibit 90, however, is a Settlement Agreement with Lee Energy with an attachment showing the attorney's breakdown of the distribution of funds received from Lee Energy. The Settlement Agreement itself shows $350,000 as the settlement paid for dismissal of the lawsuit with no admission of liability, but the attachment also identifies two payments as commission payments. It states that there was an $86,833.09 payment for a July 2013 shipment and a $27,350.32 payment for a November 2013 shipment. These amounts were reduced by payments to the attorney, and Sellers claims $26,049.92, $8,205.10, and $105,000.00, for the two commission payments and dismissal amount, respectively.

B. Conclusions of Law

Sellers brings claims for breach of a Joint Venture Agreement/Contract based on a failure to pay Sellers a share of an April 2012 and August 2012 commission payment from Lee Energy, a breach of contract claim based on the failure to repay a loan of the same two commission payments, and a breach of contract claim based on the failure to pay half of a lawsuit settlement

5

which included July and November 2013 commission payments. Sellers' claims for additional damages are based on fraud theories, and he also has an alternative claim for unjust enrichment.

The court begins with the breach of contract claims.

1. Breach of Contract and Joint Venture Agreement Claims

    a. The Agreements

    i. Joint Venture Agreement

The facts, set out above, are that Sellers and Colquitt, on behalf of Renewable Fuels, entered into an agreement by which Sellers would be paid a 50% share of the commission payments, less expenses, to be paid by Lee Energy for wood pellet sales secured by Renewable Fuels, and this agreement was followed, and confirmed, four times when checks were issued to Sellers pursuant to that agreement. This agreement was between Sellers and Renewable Fuels.

The issue of the breach of contract based on the settlement proceeds of the lawsuit against Lee Energy is an issue of breach of the Joint Venture Agreement, by which Renewable Fuels agreed to pay Sellers a share of all of the commission payments received by Renewable Fuels from Lee Energy. The Settlement Agreement with Lee Energy, (Plaintiff's Exhibit 90), states that there was an $86,833.09 payment for a July 2013 shipment and a $27,350.32 payment for a November 2013 shipment. The Settlement Agreement also includes a $350,000.00 payment for an unspecified purpose. The Joint Venture Agreement/Contract between Sellers and Renewable Fuels only included commission payments, less expenses. There is no evidence before the court that the $350,000 payment was for commissions. Because the original contract, or Joint Venture Agreement, included only commissions, and there is no proof that the $350,000 was to pay for commissions, the court cannot conclude that the $350,000 payment in the

6

Settlement Agreement is within the scope of the Joint Venture Agreement between Sellers and Renewable Fuels.

### ii. Contract with Colquitt

A separate agreement was entered into in May of 2012 between Sellers and Colquitt individually. In a phone conversation, Sellers and Colquitt entered into this new agreement that Sellers would not be paid a share of the April Lee Energy commission payment, or one future commission when it came in (which turned out to be August 2012), but instead that Colquitt would pay Sellers later for those commission payments.

Therefore, although Sellers has claimed that Renewable Fuels is also liable for failure to pay the April and August commission payments, the failure to pay the commission payments from April and August is not an issue of breach of the Joint Venture Agreement/Contract because of the new, separate May agreement. It was Colquitt who individually entered into the new agreement to use, for his personal tax purposes, Sellers' share of the April and August commission payments, and to later pay Sellers what Sellers was owed from the April and August commissions. Sellers can only recover his share of the April and August payments from Colquitt individually.

Although Colquitt admitted at trial that he orally agreed that half of all Renewable Fuels' commissions from Lee Energy would be paid to Sellers, in fact paying Sellers in accordance with that agreement, and he admitted that when he spoke to Sellers by phone in May of 2012, they agreed that he would pay personally two commission payments owed at a later date, the Defendants have taken the position that neither of those agreements is enforceable. The court, therefore, will now address the defenses to those contracts.

b. Defenses to Agreements

i. Mutual Assent

The Defendants argue that there was no meeting of the minds, or mutual assent, as to the initial agreement for Renewable Fuels to pay half of its commissions from Lee Energy sales to Sellers. The Defendants state that the parties did not agree why Renewable Fuels paid Sellers a share of the commissions.

There is evidence in the record that Colquitt offered to have Sellers be a member of Renewable Fuels, but that Sellers declined. Sellers, Colquitt, and Renewable Fuels, however, held Sellers out to prospective customers as being a part of Renewable Fuels, even referring to him as the Chief Financial Officer. *See, e.g.*, Defendants' Exhibit 12. Colquitt also testified that one reason why he offered to share commissions with Sellers was to ensure that Sellers could keep the company going if something happened to Colquitt, and there would be someone to take care of Colquitt's widow.

The facts, therefore, support the conclusion that Sellers was not a formal officer or even a member of Renewable Fuels, but in exchange for his acting as though he were a part of Renewable Fuels in its business transactions with Lee Energy and other companies, Sellers was paid a share of the commissions paid to Renewable Fuels from Lee Energy. The court concludes, therefore, that there is sufficient evidence of mutual assent.

ii. Statute of Frauds

Before the court examines the application of the Statute of Frauds defense, the court notes that at various points in this litigation Colquitt has defended against two claims, breach of the Joint Venture Agreement, and breach of the May 2012 agreement, by arguing that the oral

agreements are barred by the Statute of Frauds. In his post-trial brief, however, in which he asserts trial defenses, Colquitt does not invoke the Statute of Frauds with respect to the initial Joint Venture Agreement, but instead specifically invokes the Statute of Frauds only with respect to Count III of the Amended Complaint, which is the claim based on the May 2012 agreement. (Doc. #67 at p.8). Colquitt either concedes, and the court agrees, that the multiple e-mails exchanged which confirmed commission sharing satisfy the Statute of Frauds, *see Truck Rentals of Alabama, Inc. v. M.O. Carroll-Newton, Co., Inc.*, 623 So. 2d 1106, 1111-1112 (Ala. 1993)(writings considered together can constitute a writing for the Statute of Frauds), or has waived the affirmative defense. *Cf. Hewitt v. Mobile Research Technology, Inc.*, 285 Fed. App'x 694 (11th Cir. 2008)(Statute of Frauds is a waivable affirmative defense under the Federal Rules of Civil Procedure). Therefore, the court concludes that the Statute of Frauds does not bar a claim based on the original commission sharing agreement. The court will address the Statute of Frauds defense only in connection with the May 2012 agreement.

Alabama's Statute of Frauds provides that "every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing: . . . (3) Every special promise to answer for the debt, default or miscarriage of another . . . (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000." Ala. Code § 8–9–2(3),(7).

Sellers disputes that the Statute of Frauds applies to the May 2012 agreement because he argues that Colquitt asked to use the money which would have been paid to Sellers for a tax

obligation of Colquitt, so that this was an original agreement, not an agreement to pay the obligation of another, citing *Waide v. Bingham*, 583 So. 2d 263 (Ala. 1991).

As noted above, the court has concluded that the evidence supports a conclusion that the May 2012 agreement was an agreement by which Colquitt agreed to be responsible for Renewable Fuels' obligation toward Sellers for his share of two commission payments. The court need not decide, however, whether that May 2012 contract is one which falls within the Statute of Frauds, because the court agrees with Sellers' alternative argument that the Statute of Frauds has been met.

Sellers and Colquitt both testified that they made an agreement by phone that Sellers would not be paid his share of the April commission payment, or the next, from Lee Energy. Colquitt agreed that he would pay the commissions at a later point. Although Colquitt testified that he did not make a payment pursuant to that agreement because the Century project did not close, he also acknowledged that the agreement included payment in the future from either the Century project deal, or from additional Lee Energy Commission payments.

The facts of the e-mail memorializing that agreement, as found earlier, are that Sellers sent an e-mail confirming their agreement that the commission already owed, as well as the next, would be loaned to Colquitt and repaid by him in the future. Colquitt responded to the e-mail by incorporating Sellers' e-mail into Colquitt's own e-mail, and including Colquitt's notations after various sentences in Sellers' original message. There is no comment after the paragraph in the email regarding the "Lee money issue," and no indication by Colquitt that he did not agree with the statement which he incorporated into his own e-mail. In fact, when Colquitt testified at trial, he agreed that he never told Sellers anything was wrong in the e-mail, because he assumed for a

10

loan there would be paperwork. When specifically asked, Colquitt agreed in his trial testimony that the e-mail accurately described the conversation between himself and Sellers.

An e-mail can be sufficient to satisfy the Statute of Frauds because the "Statute of Frauds does not require that the writing supporting a contract or modification take any particular form, only that it be 'subscribed by the party to be charged.'" *LSREF2 Baron, LLC v. Wyndfield Properties, LLC*, Civil Action No. 2:12cv965, 2013 WL 6388597, at * (M.D. Ala. Dec. 6, 2013). Colquitt's incorporation of Sellers' e-mail into his own is sufficient to constitute a writing subscribed by the party to be charged. *Cf. Preston Law Firm, LLC v. Mariner Health Care Management Co.*, 622 F.3d 384, 391 (5th Cir. 2010) (noting that emails can qualify as signed writings, and finding sufficient writings to form a contract where an email when read together with a previous email provided evidence of acquiescence to the terms previous email). The court concludes that neither of the Defendants' defenses is availing.

c. Conclusions as to Breaches of the Agreements

Based on the facts and conclusions set forth above, the court concludes that Colquitt breached the May 2012 agreement by failing to pay Sellers a share of the April 2012 and August 2012 commissions, and that Renewable Fuels breached the Joint Venture Agreement by failing to pay Sellers a share of the commission payments included in the settlement with Lee Energy. The court concludes, therefore, that judgment will be entered against Colquitt individually for $47,938.43 and $47,119.80, plus prejudgment interest[2] and against Renewable Fuels, LLC for $26,049.93 and $8,205.10, plus prejudgment interest.

---

[2] Sellers seeks prejudgment interest at a rate of 6% pursuant to Ala. Code §8-8-8. The Defendants do not appear to dispute that the award of prejudgment interest at this rate is appropriate.

2. Promissory Fraud

A claim of promissory fraud requires a plaintiff to prove by substantial evidence (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation, (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1210 (Ala. 2008); *Wade v. Chase Manhattan Mortg. Corp.*, 994 F. Supp. 1369, 1378, *aff'd without op.*, 132 F.3d 1461 (11th Cir. 1997).

Sellers claims that Colquitt committed promissory fraud when he promised to repay Sellers for the April and one future Lee Energy commission. Sellers argues that based on Colquitt's testimony at trial Colquitt only intended to pay Sellers from the closing of the Century project and not from the Lee Energy commissions.

Colquitt's position in his post-trial brief is that Colquitt's intent was to pay Sellers, and he did not know at the time that he promised to pay the commissions in the future that the Century project would fail, or that Lee Energy would take the position that it did not owe additional commission payments to Renewable Fuels.

"The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time of the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive." *Purcell Co. v. Spriggs Enterprises, Inc.*, 431 So. 2d 515, 519 (Ala. 1983).

The Alabama Supreme Court has examined evidence to determine whether inferences of intent not to perform and to deceive could be drawn and reasoned that if "the most that might reasonably be inferred from the evidence introduced was that . . . promise was a reckless misrepresentation," fraud is not proven because "it must be shown that the person making the misrepresentation intended not to do the act promised at the time the misrepresentation was made." *Russellville Prod. Credit Ass'n v. Frost*, 484 So. 2d 1084, 1087 (Ala. 1986). A promise hastily made is not fraud if there is no "intent to deceive, or the present intent not to perform." *Id.*

In this case, Colquitt made a promise to repay money owed to Sellers. The promise, as adopted in an e-mail, was that payment would be triggered by the Century Project or future commission payments by Lee Energy, whichever occurred first. Colquitt testified at trial that he agreed to pay for the commission payments when the Century project deal closed or when additional Lee Energy commission payments were received, and when asked why he did not pay Sellers for the commission payments, he answered that the Century Project did not close. When Colquitt was asked at trial if he ever told Sellers that if the Century project did not close, Colquitt was not going to pay Sellers, he answered, "No. He was so sure it was going to close." At trial, Colquitt also testified that he and Sellers had expected Century to close "close by," an October 2012 date pointed to by the attorney in questioning Colquitt.

The evidence before the court is that Colquitt made a promise to pay at a time when the parties felt sure that the Century project would close, and that they thought the closing would be soon. This is not a case, therefore, in which a promise was made by a person who knew at that time that the promise could not be fulfilled. *See Byrd v. Lamar*, 846 So. 2d 334, 348 (Ala. 2002).

13

It is undisputed that Colquitt did not perform as promised, but that is not sufficient to prove intent not to perform or to deceive. *Russellville Prod. Credit Ass'n*, 484 So. 2d at 1986. Colquitt did not testify that it was his intent at the time of his promise not to pay Sellers. His testimony was that he ultimately did not pay Sellers because the Century project did not close, which may be sufficient to infer that he recklessly made a promise to pay Sellers based on his expectation that funds would be forthcoming from some source, but it does not establish present intent not to perform, or an intent to deceive. *See North Alabama Elec. Co-op. v. Tennessee Valley Auth.*, 862 F. Supp. 2d 1291, 1302 (N.D. Ala. 2012) (finding insufficient evidence of intent where speaker may have believed he had more authority than he actually did, or simply chose his words poorly). The court concludes, therefore, that Sellers has failed to prove by substantial evidence all of the elements of a claim for promissory fraud.[3]

### 3. Suppression

The elements of a suppression claim are (1) a duty to disclose the facts, (2) concealment or nondisclosure of material facts by the defendant, (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997). Silence is not fraud unless an obligation to communicate a material fact exists. *Id.*

Colquitt did not inform Sellers about the settlement of the lawsuit against Lee Energy. Sellers argues that Colquitt had a duty to inform him about the settlement, but Sellers does not present any argument as to how he relied on the failure to disclose the settlement to him. There is

---

[3] The court notes at any rate that Sellers has claimed the same amount in compensatory damages for promissory fraud as the compensatory damages clamed for breach of contract, the court has found Colquitt liable for those damages, and the Plaintiff has not offered any evidence to support an award of additional damages.

no evidence before the court that Sellers was induced to act in any way by Colquitt's silence. The court concludes, therefore, that Sellers has not proven a claim of suppression.

### 4. Unjust Enrichment

Having concluded that Sellers is entitled to judgment based on his contracts with Renewable Fuels, LLC and Colquitt, the court concludes that Sellers is not also entitled to equitable relief. *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) (stating that the existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law).

### 5. Prejudgment Interest

The Defendants have not disputed that prejudgment interest would be due at 6% on the contract claims, and the court accepts as accurate the Plaintiff's interest computations set out in Exhibit 2 to his Post-Trial Brief (Doc. #66-2).

#### a. Renewable Fuels

On March 3, 2014, Renewable Fuels received from the Lee Entergy settlement a net commission, after attorney's fees, of $52,099.85, for the July 2013 shipment, to which Plaintiff is entitled to ½, or $26,049.92, plus 6% interest from that date to the date of this Order in the amount of $4,016.61, for a total of $30,066.54.

Renewable Fuels received on March 24, 2014, net commissions of $16,410.19 for a November 2013 shipment from which the Plaintiff is entitled to $8,205.10, as claimed by him, plus 6% interest from that date to the date of this Order in the amount of $1,236.87, for a total of $9,441.97.

b. John F. Colquitt

The amount due from Colquitt on the contract claim totals $95,058.23, plus six percent interest on that amount from April 4, 2014, the date when Colquitt receive enough funds from the settlement with Lee Energy to pay this amount owned to Sellers, as claimed by him, in the amount of $14,172.11, for a total of $109,231.14.

### III. CONCLUSION

Based on the findings of fact and conclusions of law set forth above, it is hereby ORDERED as follows:

1. The court finds in favor of Philip Sellers and against the Defendant Renewable Fuels, LLC on Plaintiff's claim for Breach of Joint Venture Agreement/Contract and assesses damages at $34,255.03 plus $5,253.48 in interest.

2. The court finds in favor of Philip Sellers against John F. Colquitt on a breach of contract claim and assesses damages at $95,058.23 plus $14,172.91 in interest.

3. The court finds in favor of John F. Colquitt and Renewable Fuels, LLC on all other claims.

4. Judgment will be entered accordingly, with costs taxed against the Defendants.

Done this 11th day of October, 2016.

                                          /s/ W. Harold Albritton
                                        W. HAROLD ALBRITTON
                                        SENIOR UNITED STATES DISTRICT JUDGE